# Bounty Accounts, 11th Ward, Pittsburg.

A local act authorized the appointment of auditors by the Quarter Sessions to audit the bounty accounts of the school directors of any ward, &c., in Allegheny; a subsequent general act with no repealing clause nor reference to the other, made it the duty of all school directors, &c., who had raised money for bounties to have their accounts audited "at the time of auditing other accounts by the proper board of auditors of the ward, &c." *Held*, that the last act did not repeal the first, and that auditors were properly appointed under the first to audit bounty accounts in a ward in Pittsburg.

November 4th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Certiorari to the Court of Quarter Sessions of *Allegheny county*: No. 207, to October and November Term 1871.

This certiorari was issued to bring up the record of the Court of Quarter Sessions in the matter of auditing the bounty accounts of the 11th (late 7th) ward of the city of Pittsburg.

On the 4th of April 1866, an Act of Assembly (Pamph. L. 510), was passed, the 1st section of which was as follows:—

"The Court of Quarter Sessions of the counties of Allegheny and Westmoreland are hereby authorized and empowered, upon

[Bounty Accounts.]

the application of five taxable citizens of any ward, borough or township in said counties, to appoint three competent persons as auditors, to audit and examine the bounty accounts of the school directors of any ward, borough or township in said counties, with power to examine witnesses and enforce attendance of persons and papers; and the report or finding of said auditors shall be evidence in any legal proceeding, in any court in said counties."

The 2d section provided for paying to the treasurer of the school fund for school purposes any surplus of the bounty fund which might be found in the hands of the school directors.

Another act was passed April 11th 1866 (Pamph. L. 778), the 1st section being as follows:—

"That it shall be the duty of the commissioners, supervisors, borough and city councils, school directors, board of election officers, and all other persons and officials who, under the directions and authority of an Act of the General Assembly, relating to the payment of bounties to volunteers, approved the 25th day of March, A. D. 1864, and the several supplements thereto, proceeded to raise money, by taxation or otherwise, as the agents, officials or representatives of any county, township, ward, city or borough, for the payment of bounties to volunteers, to have their accounts regularly and legally audited, at the time of auditing other accounts, by the proper board of auditors of the county, township, ward, city or borough, for which such moneys were so raised and expended."

The 2d section provides that if such accounts have not been audited, the auditors shall notify delinquent officials or parties having authority, to raise money for bounties, to appear before them at a time fixed for the purpose of auditing their accounts to the close of the last fiscal year, and thence annually thereafter, as provided in the 1st section, and in case of failure to appear, subjecting them to a penalty.

. On the 16th of July 1870, more than five taxable citizens of the 11th (late 7th) ward, Pittsburg, petitioned the Court of Quarter Sessions to appoint three auditors to audit the bounty accounts of that ward, in conformity with the Act of April 4th 1866.

On the 16th of July 1870, the court appointed George R. Duncan and two others auditors for the purposes mentioned in the petition.

The school directors and A. A. Moore, treasurer of the ward, on the 26th of July 1870, filed exceptions as follows:—

1. The court has no jurisdiction of the subject-matter of said petition.

2. The Act of the 4th day of April 1866, mentioned in said petition, was superseded and repealed by the general law enacted April 11th 1866, and the present proceeding is illegal and void.

[Bounty Accounts.]

3. The three persons named as auditors were appointed at the instance of the petitioners and their counsel, without notice to the exceptants or others interested in the matter in controversy, and the said auditors are incompetent to serve, because they were selected and named by the petitioners.

4. The said petition does not state matters or facts sufficient to give the court jurisdiction.

5. The bounty accounts of the school directors of said ward, to wit, the Seventh Ward of the city of Pittsburg (since named the Eleventh Ward) were audited according to law in 1865, pursuant to the Act of Assembly of March 25th 1864, and afterwards, in pursuance of the general law of April 11th 1866, the bounty accounts of said school directors and said Albert A. Moore, as treasurer, were duly examined and audited in 1869 in a regular and legal manner, and a regular report and a condensed statement of the condition of said finances made and published, and that a final settlement was made with the said Albert A. Moore, treasurer, according to said report, the balance in his favor being $538.39.

6. The said finances relating to the payment of bounties to volunteers were regularly and legally audited, as stated in the above exception, and notice thereof publicly given, and neither the said petitioners nor any other citizen or person interested therein, excepted thereto or appealed therefrom, and said result of said audit became and is in full force, unreversed and final and conclusive upon said petitioners, and all other persons interested therein.

On the 3d of December 1870 the exceptions were dismissed, and on the 5th of same month the auditors made their report which was ordered to be filed.

On the 7th of January 1871, on the petition of George R. Duncan, one of the auditors, the court granted a rule on the school directors to show cause why they should not pay the costs and auditors' fees in the foregoing proceedings. On the 20th of June 1871 the rule was made absolute, and the auditors' fees fixed at $600, to be distributed as was set out in the decree.

On the 19th of August the court ordered the school directors to pay the fees and costs in the proceedings out of any unexpended money in their hands.

The proceedings were removed into the Supreme Court by certiorari, at the instance of school directors and the treasurer.

There were eight assignments of error:

1–6. Dismissing the exceptions.

7. Granting the rule to show cause, and making it absolute.

8. Ordering the directors to pay the fees and costs.

[Bounty Accounts.]

*A. M. Brown* (with whom was *G. Shiras, Jr.*), for certiorari.—
The Act of April 11th 1866 provided a general system on the
same subject-matter, to operate throughout the state, and by
implication repeals the special Act of April 4th: Southwark Bank
*v.* Commonwealth, 2 Casey 446; Genkinger *v.* The Common-
wealth, 8 Id. 99; Stoever *v.* Immell, 1 Watts 258; Fenelon's Peti-
tion, 7 Barr 173; Dwarris on Statutes 673–677. The directors
should have notice of the appointment of the auditors: Reitenbaugh
*v.* Chester V. Railroad, 9 Harris 100. There was no legal obliga-
tion on the directors to pay the expenses of the audit—they could
not be compelled except by the verdict of jury: Tyson *v.* Halifax
Township, 1 P. F. Smith 9; Norman *v.* Heist, 5 W. & S. 171;
Musser *v.* Good, 11 S. & R. 247–250; Maus *v.* Maus, 10 Watts
87; Brightly on Costs 13, 14, 110.

*C. Magee* (with whom was *McLeod*), contrà: on the 7th and
8th exceptions, cited Fitzsimmon's Appeal, 4 Barr 248.

The opinion of the court was delivered, May 13th 1872, by

Read, J.—The important question in this case is, whether the
Court of Quarter Sessions of Allegheny county had jurisdiction
of the subject-matter of the petition, or in other words, whether
the particular local Act of Assembly of the 4th April 1866 (Pamph.
L. 510) mentioned in the petition, was superseded and repealed
by the general law enacted April 11th, in the same year (Pamph. L.
778), seven days afterwards. The general question of the effect
of a general statute upon a previous particular statute has been
much discussed in England within the last twenty years, and has
given rise to several decisions, both in equity and common law,
which we will proceed to examine.

In Gregory's case, 6 Co. 196, " three errors were assigned, 1, that
the said branch of the act was abrogated and taken away by the
Stat. of 5 Eliz. cap. 4. *Sed non allocatur.* For *inspecto statuto*
they both stand together, and it was said that a later statute, in
the affirmative, shall not take away a former act, and *eo potius*,
if the former be particular and the latter general." So in Judge
Jenkin's eight centuries of Reports, 41 Case, Third Century, p.
120. It is said " The Statute of the 14 Ed. 3 ordains that every
merchant who ships goods to be exported over sea, shall be com-
pelled to find sureties to import two marks in bullion, upon his
return to be delivered to the mint, and he shall have two marks
of refined silver for it; afterwards by Acts of Parliament of 45
Ed. 3 and 10 R. 2, it was ordained that after three years no new
charge should be imposed upon the subject. These last general
statutes did not repeal the said statute of the 14 E. 3, for it is a
special statute, and it is not a charge to the subject, for he has
*quid pro quo ; generalia specialibus non derogant.*"

And in Lyn *v.* Wyn, reported in The Judgments of Sir Orlando Bridgman as Chief Justice of the Common Pleas, he says, p. 127, " And the law will not allow the exposition to revoke or alter by construction of general words, any particular statute where the words may have their proper operation without it."

In the Trustees of the Birkenhead Docks *v.* The Birkenhead Dock Company, Laird and another, 23 L. J. N. S. Ch., 457, it was held that " a private act of Parliament, although declared to be a public act, cannot by any implication repeal a former private act; and such repeal can only operate, if there be in the subsequent act words which will operate as an express repeal of the act." In this case Lord Justice Turner expressly approved the rule, as stated in the Third Century, p. 120, quoted above, saying, " To this rule of law I entirely assent."

In The London & Blackwell Railway Company *v.* The Board of Works for the Limehouse District, 26 L. J. R. N. S. Ch., 164, Vice-Chancellor Wood held, that where the legislature has vested special powers in a particular body for certain special purposes, a general act subsequently passed will not override those special powers, citing and approving the preceding case, and the case of Sir Foulk Grevil, in Jenkin's Third Century Case, 41, p. 120. The same learned judge in Fitzgerald *v.* Champneys, 30 L. J. R. N. S. Ch. 787, held that a local Act of Parliament is not, in the absence of any indication of intention on the part of the legislature, repealed or superseded by a public general act subsequently passed. In the Conservators of the River Thames *v.* Hall and another, 37 L. J. R. N. S. C. P., 163, Montague Smith, Justice, says, p. 167, " The rule is that a later statute which is general and affirmative, does not abrogate a former which is particular."

In Thorpe *v.* Adams, 6 Law R. C. P. 125, Lord Chief Justice Bovill (p. 135) says, " But the general principle to be applied to the construction of Acts of Parliament is, that a *general* act is not to be construed to repeal a previous *particular* act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together," and in The Queen *v.* Champneys, Id. 394, the same learned judge says, " It is a fundamental rule in the construction of statutes, that a subsequent statute in general terms, is not to be construed to repeal a previous particular statute, unless there are express words to indicate that such was the intention, or unless such an intention appears by necessary implication. We had occasion to consider that matter in the recent case of Thorpe *v.* Adams."

With this clear and authoritative exposition of the law, we will proceed to an examination of the two Acts of the 4th and 11th April 1866. The Bounty Acts were of a temporary character, growing out of the necessities of the rebellion, and the sums

raised under them by subscription or assessment required careful auditing and settlement of the accounts of the various agents and officials through whose hands they passed.

The Act of the 4th April 1866, is a special local particular act of Assembly, applying only to the counties of Allegheny and Westmoreland, and to the bounty accounts of school directors of any ward, borough or township in said counties. The Courts of Quarter Sessions of the said counties are authorized and empowered "upon the application of five taxable citizens of any ward, borough or township in said counties; to appoint three competent persons as auditors, to audit and examine the bounty accounts of the school directors of any ward, borough or township in said counties, with power to examine witnesses and enforce attendance of persons and papers, and the report or finding of said auditors shall be evidence in any legal proceeding in any court of said counties.

The second section provides, "Whenever any surplus funds, arising fiom bounty subscription or assessment, shall be found in the hands or custody of the school directors as aforesaid, the same shall be paid over to the treasurer of the school fund for said school district for school purposes."

The Act of 11th April 1866 is a general affirmative act with no negative words, making it the duty " of the commissioners, supervisors, borough and city councils, *school directors*, board of election officers, and all other persons and officials, who under the directions and authority of an Act of the General Assembly relating to the payment of bounties to volunteers, approved the 25th day of March 1864, and the several supplements thereto, proceeded to raise money by taxation, or otherwise, as the agents, officials or representatives of any county, township, ward, city or borough, for the payment of bounties to volunteers, to have their accounts regularly and *legally* audited, at the time of auditing other accounts *by the proper board of auditors* of the county, township, *ward*, city or borough, for which such moneys were so raised and expended."

The second section provides for the delinquency of the officials, or of the board of auditors, and makes them liable to a fine of $50 for such delinquency, and the third section obliges the auditors to prepare a condensed statement of the condition of these finances, and publish the same at the cost of the district, for three successive weeks in the two newspapers having the largest circulation in the city or county.

It will be perceived that there are no words repealing the Act of the 4th April, nor any express reference to it, nor is there a necessary inconsistency in the two acts standing together; on the contrary, in the case before us there would be a failure of justice if the local special act were not upheld. There is no proper board of auditors for the Eleventh (late Seventh) ward, or any other

20 P. F. SMITH—7

ward in the city of Pittsburg, by whom these bounty accounts of the school directors can be regularly and legally audited, under the general act, and as a necessary result the local special act applies to and governs this case.

The Court of Quarter Sessions had jurisdiction of the subject-matter of the petition, and this disposes of the first six assignments of error. Nor are we disposed to interfere with the action of the court complained of in the seventh assignment of error, it having the power to direct and enforce the payment of the expenses of the audit, and this of course negatives the ninth and last assignment of error.

All the assignments of error are in fact based upon a want of jurisdiction in the court, and no errors are specially assigned to the report or finding of the auditors.

Decision of the Court of Quarter Sessions affirmed.